JOHN M. BURKE
Attorney at Law

26 Court Street - Suite 2805
Brooklyn, New York 11242
Tel: (718) 875-3707
Fax: (718) 875-0053

May 22, 2012

Honorable Paul A. Crotty
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

                Re.:   U.S. v. Fabio Morel
                         10 CR 798 (PAC)

Dear Judge Crotty:

      I am writing on behalf of my client, Fabio Morel, to request that the Court be as merciful as possible at the time of sentence. The Department of Probation has recommended that Morel be sentenced to the statutory minimum sentence for his crimes of conviction. P.S.R.[1] addendum pg. 23.[2] Mr. Morel joins in that request and implores the Court to fashion a sentence in accordance with the directives of 18 U.S.C. 3553 that would enable him to receive a custodial term far below his advisory guideline range.

1.    THE ADVISORY GUIDELINE COMPUTATION

      The Probation Department and the defense have varying guideline estimates. The Department's contends that Morel's total offense level is 43 and in Criminal History Category III this results in an advisory guideline sentencing range of life in prison. The defense believes that More's correct guideline computation would be

---

[1] Pre Sentence Report

[2] Since the Government filed notice pursuant to §21 U.S.C. 851 the minimum sentence is 20 years.

total offense level 36 and in Criminal History Category III this would result in an advisory guideline range of 235 to 293 months I prison. That result is based upon the following guideline analysis:

| | |
|---|---:|
| Base offense level | |
|    150 kilograms of cocaine | 38 |
| Reduction for minor role | |
|    §3B1.2(b) | -2 |
| Final offense level | 36 |

Offense level 36 in Criminal History III = 235 - 293 months.

Morel does not believe his advisory guideline offense level should be increased for possession of a firearm or violence. See <u>P.S.R. parg.</u> 41. He also argues that in this instance it would be inappropriate to use the murder guideline to raise his final offense level. See <u>P.S.R. parg.</u> 43.

## II. IT WOULD BE INAPPROPRIATE TO USE THE MURDER GUIDELINE IN MOREL'S CASE

Morel was convicted of participating in a narcotics conspiracy and distributing cocaine. He was never convicted of, or charged with, murder or participating in a conspiracy to murder. It would be a complete denial of due process to punish Morel with a life sentence based upon an uncharged crime.

At trial a government informant accused Morel of acting as the getaway driver in the murder of Javier Sanchez. The testimony linking Morel to this crime was uncorroborated by any other testimony or forensic evidence. This informant also

testified he never actually saw Morel drive the getaway vehicle (Tr. 553 )[3], Under these circumstances it would be unfair to increase Morel's sentence based upon the speculations of an informant.

III. MOREL'S GUIDELINE LEVEL SHOULD NOT BE INCREASED FOR USE OF A WEAPON OR VIOLENCE PURSUANT TO U.S.S.G. 2 D1.1(b)(1) and (2)

    A. MOREL NEVER HAD A WEAPON

There was no testimony adduced at trial indicating that Fabio Morel shot, brandished or possessed a firearm. It is important to note that the Government informant, Lennyn Mendez, testified that he never saw Fabio Morel with a gun. Tr. 553.

Morel understands that the possession of a firearm by a co-conspirator may under certain conditions be attributable to other individuals involved in the conspiracy. U.S. v. Stevens, 985 F.2d 1175 (2d Cir. 1993); Gordils v. U.S., 943 F. Supp. 346 (S.D.N.Y. 1996). U.S. v. Ponce, 168 F.3d 584 (2d Cir. 1999); U.S. v. Norris, 277 F. Supp. 2d 189 (E.D.N.Y. 2007); also see U.S. v. Pelligrini, 929 F.2d (2d Cir. 1991).

However, in this instance the allegations that weapons were present in locations Morel did not have access to, or were possessed by others, P.S.R. parg. 27, 41,46, is not sufficient proof that the weapon was used in connection with the conspiracy or that Morel had any nexus to the firearms.

    B. MOREL NEVER ENGAGED IN ACTS OF VIOLENCE OR THREATS

Fabio Morel never engaged in acts of violence or threatened to use violence during the course of the conspiracy. During the trial there was no testimony indicating that Morel participated in violent acts or threats in connection with the

---

[3]Tr refers to trial transcript.

narcotics conspiracy. The sole piece of evidence connecting Morel with violence was the uncorroborated claim that Morel could have been a getaway driver in the attack on Javier Sanchez. (See Point II)

The defense maintains that this unsubstantiated accusation is an insufficient basis for an offense level increase pursuant to §2 D1.1(b)(2).

IV. <u>FABIO MOREL WAS A MINOR PARTICIPANT IN THE OVERALL NARCOTICS CONSPIRACY AND HIS OFFENSE LEVEL SHOULD BE REDUCED BY 2POINTS PURSUANT TO U.S.S.C.§ 3 B1.2.(b)</u>

In view of the large scope and long duration of the narcotics operation described at trial, Fabio Morel played a minor rule in the overall conspiracy. This wide ranging cocaine smuggling ring lasted over <u>eight</u> years and during that time more than 150 kilos of cocaine was sold. The evidence at trial indicated that Morel worked as a driver and packer for the Lopez organization. He did not negotiate with suppliers, set prices or garner a large percentage of the profits. Testimony showed that Morel acted as a courier or "mule" for the drug ring. Often the least culpable members of a narcotics conspiracy have the most direct exposure to the authorities. More sophisticated members of the conspiracy directed and instructed Morel about when to drop off drugs and pick up money.

The Department of Probation has improperly characterized Morel as being Amory Lopez, Jr.'s right hand man. P.S.R. pg 11, p. 42. Morel functioned as one of Lopez Jr.'s many minions and had no ability to act independently or without direct supervision. His actions as a driver and courier for Lopez, Jr.'s narcotics ring clearly show that Morel had a minor role in the overall conspiracy.

V. <u>THE TIME FABIO MOREL SPENT IN CUSTODY ON HIS 2006 MONEY LAUNDERING CONVICTION SHOULD BE CREDITED TO THIS CASE</u>

In 2008 Fabio Morel was sentenced to 1-1/2 to 3 years in prison for money laundering. This conviction was part of the criminal behavior encompassed by the

conspiracy proven at trial. P.S.R. page 15, parg. 65. It would be unfair to punish Morel twice for the same criminal activity and in similar situations Courts have utilized their ability to downwardly report and adjust an offender's sentence. United States v. Rosado, 254 F. Supp.2d 316, S.D.N.Y. (2003); also see United States v. White, 354 F.2d 841 (8th Cir. 2004). The District Court also has the ability to adjust a defendant's sentence below the statutory minimum based upon time he has already served on a state sentence. United States v. Kiefer, 20 F.3d 874 (8th Cir. 1994).

In this instance the Court should reduce Morel's Federal sentence by 18 months, the time he has already served in State custody.

VI. FABIO MOREL ASKS THE COURT TO TAKE
    INTO CONSIDERATION HIS PERSONAL
    HISTORY AT THE TIME OF SENTENCE

Fabio Morel is a 41 year old United States citizen and a life long resident of New York State. Fabio was the only child born from the union of Israel Peralta and Mercedes Luna. He was primarily raised by his single mother who worked in factories and restaurants to support the family. He did not know who his biological father was until he was 35 years old. His mother currently lives in Manhattan, has heart problems and diabetes and is supported by her S.S.I. disability payments.

Fabio Morel left school after 11th grade in order to find work and support his family. He spent years doing various construction jobs including working at a cement and concrete company in Long Island City. His first serious romantic relationship was with Janet Reyes and the couple had three children: Crystal age 23, Tashia age 22, and Aaron age 19. Presently, these children are all doing well and attending college.

In 2001 Fabio became involved with his current girlfriend, Maria La Paz, age 47. Maria is a nurse's aid and lives in Bayshore, New York with Fabio and her three children: John age 21, Scarlett age 15 and Carlos age 13. All of Fabio Morel's

biological and step children have a loving and supportive relationship with him and pray for a lenient sentence.[4]

Fabio Morel's criminal activity has been largely generated by his narcotics addiction. He began to use drugs when he was a teenager and gradually became addicted to cocaine. When he was at liberty Fabio was always attempting to stay sober and desperately tried to avoid the lure of cocaine and marijuana. He attended Narcotics Anonymous meetings in Bayshore, New York for six months and requests that the Court order drug treatment and counseling as part of his sentence.

VI.  <u>FABIO MOREL ASKS THE COURT
     TO IMPLEMENT THE SENTENCING
     GOALS OF 18 U.S.C. 3553(a)</u>

Apart from consideration of departures under the now "advisory" Guidelines, 18 U.S.C. §3553(a) requires courts to "<u>impose a sentence sufficient, but not greater than necessary</u>, to comply with the purposes set forth in paragraph 2 of this subsection." Section 3553(a)(2) states that such purposes are:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)  to afford adequate deterrence to criminal conduct;

(C)  to protect the public from further crimes of the defendant; and

(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

---

[4] See letters from Morel's family attached.

Section 3553(a) further directs the sentencing court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, the kinds of sentences available, the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offense.

Indeed, the directives of <u>United States</u> v. <u>Booker</u>, 593 U.S. 220 (2005) and <u>United States</u> v. <u>Crosby</u>, 397 F.3d 103 (2nd Cir. 2005) and §3553(a) now make clear that courts must consider all of the factors in §3553(a), many of which the Guidelines either reject or ignore. In sum, under <u>Booker</u> and <u>Crosby</u>, the Guidelines are not binding and courts need no longer justify a sentence outside of them by citing factors to take the case outside the "heartland". Courts are now free to disagree with the Guideline computations provided the ultimate sentence imposed is reasonable and supported by reasons tied to § 3553(a) factors.

An analysis of the § 3553(a) factors in this case militates in favor of Mr. Morel and calls for a sentence below the advisory guideline range.

> A. THE HISTORY AND CHARACTERISTICS
>    OF THE DEFENDANT

Fabio Morel left school after the 11th grade and quickly became ensnared by his weakness for marijuana and cocaine. Despite Morel's problems his siblings, children and wives all remain supportive of his struggles and hope for the best at sentence.

> B. THE KINDS OF SENTENCE AVAILABLE

The count of conviction carries a mandatory minimum sentence of <u>20</u> years. The defense and the Department of Probation, P.S.R. addendum pg. 23, both believe a sentence to the mandatory minimum would be sufficient punishment.

C.   FABIO MOREL ASKS THE COURT TO PROVIDE HIM
     WITH NEEDED DRUG THERAPY AND COUNSELING

Morel has been addicted to marijuana and cocaine since he was a teenager.[5] His drug dependency has been the source of many of his legal problems[6] and Morel asks the Court to send him to a facility where he can receive treatment and counseling for his drug problems.

D.   REFLECTING THE SERIOUSNESS OF THE
     OFFENSE, PROMOTING RESPECT FOR THE LAW,
     PROVIDING JUST PUNISHMENT, DETERRING
     CRIMINAL CONDUCT, PROTECTING THE PUBLIC

18 U.S.C. §3553(a) requires courts to impose a sentence "sufficient, but not greater than necessary" to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training. All of these sentencing objectives can be attained by imposing a sentence to the statutory minimum of 20 years.

CONCLUSION

It is clear that this Court may tailor the sentence in light of all the statutory concerns embodied by 18 U.S.C. §3553(a). As noted by Judge Hellerstein in United States v. Carvajal, ___ F. Supp. 2d ___, 2005, U.S. Dist. Lexis 3076, (S.D.N.Y. February 22, 2005), "rehabilitation is a ... goal of punishment ... That goal cannot be served if a defendant can look forward to nothing beyond imprisonment. Hope is the

---

[5] Morel objects to those sections of the Probation Report indicating he used crack cocaine and heroin. P.S.R. parg. 80. He denies using either of those drugs.

[6] Morel does not object to the criminal history attributed to him for his 1991 conviction but contends that the amount of drugs involved as 50 grams of crack not 104.36 grams. See P.S.R. parg. 61

necessary condition of mankind, for we are created in the image of God. A judge should be hesitant before sentencing so severely that he destroys and takes away all possibility of useful life. Punishment should not be more severe than that necessary to satisfy the goals of sentencing." Fabio Morel was convicted of participating in a narcotics conspiracy, he beseeches the Court for mercy and asks for a lenient sentence and drug treatment.

                                        Respectfully yours,

                                        s/

JB/dw                                  JOHN BURKE
                                        Attorney for Fabio Morel

cc:     United States Attorney
        Southern District of New York
        100 St. Andrew's Plaza
        New York, new York  10007
        Attention:  Aimee Hector, Esq., AUSA
                       David Miller, Esq., AUSA

        United States Department of Probation
        Southern District Office
        233 Broadway - 14th Floor
        New York, new York  10279
        Attention: P.O. Smyla Jones