```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                    :
UNITED STATES OF AMERICA                            :
                                                    :   10 Cr. 798 (PAC)
      - against -                                   :
                                                    :   OPINION & ORDER
                                                    :
FABIO MOREL,                                        :
                                                    :
            Defendant.                              :
-----------------------------------------------------------------------X
```

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendant Fabio Morel ("Defendant," "Morel") moves *pro se* for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the ongoing COVID-19 pandemic, asking that he be placed in home confinement. He also requests that counsel be appointed to represent him on this motion. Morel is 49 years old and is serving his sentence at FCI Danbury.

The request for appointment of counsel is DENIED. The motion for compassionate release is DENIED without prejudice to its renewal should Morel's health or conditions at FCI Danbury materially worsen.

## BACKGROUND

Morel was charged along with four co-defendants in a single-count Superseding Indictment filed December 13, 2010. Dkt. 14, at 1; Presentence Report ("PSR"), at 3. Morel was charged with conspiring to distribute and possess to distribute five kilograms and more of mixtures and substances containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 ("Count One"). Dkt. 14, at 1. A Second Superseding Indictment filed August 31, 2011 additionally charged Morel with intentionally and knowingly distributing and

possessing with intent to distribute 500 grams and more of mixtures and substances containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a) and (b)(1)(B) ("Count Three"), and added other counts for his co-defendants.  Morel pleaded not guilty to both counts.  Minute Entry dated Sept. 6, 2011.  A Prior Felony Information ("PFI") against Morel and two co-defendants was filed by the Government pursuant to 21 U.S.C. § 851 ahead of trial.  PFI, Dkt. 59; Dkt. 131, at 2.  An eight-day trial for Morel and two of his co-defendants was held before this Court, ending on September 21, 2011 when the jury returned a verdict of guilty, as relevant here, for Morel on both counts.  Minute Entry dated Sept. 21, 2011; Dkt. 89, at 2–3.

The conspiracy ("Lopez Organization") in which Morel participated trafficked more than 1,000 kilograms of cocaine from Puerto Rico to the United States and laundered the proceeds in a criminal enterprise that went on for about eight years.  PSR ¶¶ 13, 26; Dkt. 131, at 1–2.  Morel functioned as a "right-hand man" to the leader of the Lopez Organization, packaging cocaine and picking up proceeds in Puerto Rico, and retrieving the drugs when they reached New York City.  PSR ¶ 14.  Testimony at trial indicated that Morel served as the getaway driver for the 2004 killing of an individual who the Lopez Organization believed threatened its illicit activities.  PSR ¶ 16.  After another member of the organization was apprehended while attempting to retrieve a shipment of about one kilogram of cocaine in an aluminum canister from a Yonkers, New York post office in March 2009, Morel was recorded in a discussion with organization leaders regarding how to get the arrested man a lawyer.  PSR ¶ 17.5.

In short, Morel was estimated to be responsible for the distribution of more than 150 kilograms of cocaine, he played a critical role in the Lopez Organization's hierarchy, he was

personally implicated in acts of violence, and it was reasonably foreseeable[1] to him that other violent acts would be perpetrated to further the organization's ends.  PSR ¶¶ 33, 42.

The statutory provisions imposed a mandatory minimum of 20 years on Count One and 10 years on Count Three, with a maximum penalty of life in prison; the Guidelines were set at life; and the PSR recommended 240 months on each count to run concurrently.  PSR, at 23.  The Government requested a sentence of life imprisonment.  Dkt. 131, at 14.  On June 6, 2012 this Court sentenced Morel to 300 months on each count to run concurrently, followed by concurrent terms of supervised release of 10 years on Count One and eight years on Count Three.  Dkt. 133, at 2.

## DISCUSSION

### I.     Compassionate Release Standard

Motions for compassionate release are brought under 18 U.S.C. § 3582(c)(1)(A)(i), which provides a limited statutory exception to the general rule that a court may not modify a term of imprisonment once it has been imposed.  *United States v. Kaba*, 19 Cr. 242 (PAC), 2020 WL 2520807, at *2 (S.D.N.Y. May 18, 2020).  *See also Freeman v. United States*, 564 U.S. 522, 526 (2011) ("Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions.").  The statute permits a court to "modify a term of imprisonment":

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

---

[1] The Lopez Organization's leader and Morel's co-defendant Amaury Lopez, Jr. possessed firearms including 9 millimeter and .40 caliber handguns and an Uzi that according to trial testimony he stored at his home and in a hidden compartment in his Hummer.  PSR ¶¶ 16, 27.

18 U.S.C. § 3582(c)(1)(A). Upon fulfillment of either of those prerequisites, the court "may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that (i) extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The phrase "extraordinary and compelling reasons" is defined, at least in part,[2] by reference to the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13.[3]

---

[2] "In part" because it is clear that the text of U.S.S.G. § 1B1.13, which speaks only to motions by the Bureau of Prisons ("BOP") Director, has not been brought into line with the amendment of 18 U.S.C. § 3582(c) by the First Step Act of 2018 ("FSA"). The FSA added the provision permitting an incarcerated individual to bring a motion for compassionate release on his own behalf. Because no policy statement speaks to motions made independently by the defendant, the statement at U.S.S.G. § 1B1.13 is useful, but not binding, guidance on such motions. *See United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) ("U.S.SG. § 1B1.13 is . . . helpful in defining a vague standard.").

[3] Application Note 1 to U.S.S.G. § 1B1.13 addresses what constitutes extraordinary and compelling reasons:

> (A) Medical Condition of the Defendant
>
> > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).
> >
> > (ii) The defendant is (I) suffering from a serious physical or medical conditions, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the ageing process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the ageing process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
> …
> (D) Other Reasons—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Courts in this district have determined that in some cases "the threat of COVID-19 to those in prison constitutes an extraordinary and compelling reason for compassionate release, especially for those whose preexisting medical conditions put them at heightened risk." *United States v. Anderson*, 16-CR-824-1 (JMF), 2020 WL 2849483, at *1 (S.D.N.Y. June 2, 2020). At the same time, it is clear that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) does not constitute a "get-out-of-jail card" or an opportunity for a sentenced defendant to obtain a "windfall." *United States v. Brady*, S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020); *United States v. Roberts*, 18-CR-528-5 (JMF), 2020 WL 1700032, at *3 (S.D.N.Y. Apr. 8, 2020).

## II.     Application

This motion for compassionate release is brought *pro se* and so it is "construed 'liberally' and 'interpreted[ed] [so as] to raise the strongest arguments that [it] suggest[s].'" *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*quoting Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)) (emphasis omitted). *See also Erickson v. Pardus*, 551 U.S. 89. 94 (2007) ("A document filed *pro se* is to be 'liberally construed.'"). Nevertheless, Morel "bears the burden of proving that he is entitled to relief under 18 U.S.C. § 3582." *United States v. Garcia*, 18 CR 802-04 (CM), 2020 WL 2468091, at *2 (S.D.N.Y. May 13, 2020).

Morel's motion papers include a "Response to Inmate Request to Staff Member" dated May 15, 2020 and signed by the warden of Morel's facility denying his request for a sentence reduction due to COVID-19.[4] Dkt. 210, Ex. 1. In that document the warden of FCI Danbury

---

[4] The Government argues in its papers that Morel has not satisfied either "route to exhaustion under 18 U.S.C. § 3582(c)(1)(A)" because he submitted his request with his warden on or about May 10, 2020, and so his motion for the Court is not ripe until June 9. Dkt. 212, at 4. As of this Court's deciding of the motion, however, the statutory period of 30 days has lapsed; and in any case, Morel's motion is without merit.

5

denied Morel's request to the BOP under 18 U.S.C. § 3582(c), and further informed Morel that the BOP had determined he was not eligible for a transfer to home confinement under the CARES Act. *Id.* The Government acknowledges that Morel submitted his request to the warden on May 10, and that as of June 9 he has therefore satisfied the second of 18 U.S.C. § 3582(c)(1)(A)'s "two alternative routes to exhaustion," Dkt. 212, at 4, namely, the lapse of 30 days from the warden's receipt of Morel's request. *United States v. Ozols*, 16-CR-692-7 (JMF), 2020 WL 2849893, at *1 (S.D.N.Y. June 2, 2020).

Morel states, without detail, that he was taken to the Danbury, Connecticut hospital for a procedure about a year ago after he experienced trouble breathing, that he is on medication for hypertension, and that his health has otherwise gotten worse since 2012. Dkt. 210, at 3. He says he has recently had a blood pressure analysis that was "above normal [for] the average person." *Id.* at 3. He otherwise flatly asserts that COVID-19 "would equal a death sentence" for him because he has "poor health to begin with." *Id.* at 2.

These conditions do not constitute an "extraordinary and compelling reason" justifying Morel's early release from prison. The Government submits sealed medical records clarifying that at the time of Morel's February 2019 visit to the hospital in Danbury, he complained of abdominal pain, but "denie[d] shortness of breath, nausea, [and] chest pain." Dkt. 212, Ex. A, at 5. Morel was subsequently prescribed medication for a gallbladder condition, but as the Government observes, he makes no argument for how this would make him susceptible to an adverse outcome should he contract COVID-19. Dkt. 212, at 9. The Government also argues that FCI Danbury and the BOP are equipped to address the threat of COVID-19. *Id.* at 8. And while at 49 years old Morel is not entirely outside the zone of risk, neither does he fall in the age categories that exhibit the most severe outcomes. But of at least equal importance on this motion

is this Court's consideration of the factors in 18 U.S.C. § 3553(a) and its desire to maintain the integrity of Morel's sentence.

Morel had two prior convictions at the time of his sentencing in connection with the Lopez Organization: a 1991 federal conviction for possession with intent to distribute cocaine base for which he was sentenced to 136 months in prison, and a 2008 New York State conviction for attempted money laundering that resulted in a sentence of one-and-a-half to three years' imprisonment. PFI, Dkt. 59; PSR ¶¶ 55, 62. The Court took notice of the need for specific deterrence given Morel's repeated returns to criminal activity, and determined that a 300-month term of imprisonment was appropriate:

> I have to provide adequate deterrence both generally and specifically and in this case, given Mr. Morel's conduct, it really does cry out for deterrence in light of his history of having committed a serious drug crime and coming out of jail and going right back to drugs again . . . . [T]aking all of the facts into consideration that I have just noted including Mr. Morel's almost immediate return to drug dealing, the serious nature of which he continued for an extended period of time, I don't believe that 240 months is an adequate sentence. Accordingly, I'm going to impose a sentence of 300 months on [C]ounts One and Three.

Sent'g Tr., Dkt. 145, at 23:18–25, 24:13–19. The Court has not changed its view either of the "nature and circumstances" or "seriousness" of Morel's offense, the need "to afford adequate deterrence," or the need "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a). As discussed *supra,* Morel also had a PFI filed against him regarding his 1991 conviction. To allow Morel's release when he has served only about 10 years of his sentence would contravene the enhanced minimum penalty of 15 years imprisonment in 21 U.S.C. § 841(b)(1) triggered by the PFI. For all these reasons, the sentence Morel is serving remains "sufficient, but not greater than necessary" to meet the aims of sentencing. *Id.*

Finally, Morel's projected release date is September 10, 2031, which means that to date he has served approximately half of his effective sentence. Dkt. 212, at 2. Courts have been more inclined to grant motions for compassionate release where defendants have completed a sufficient portion of their sentence (often two thirds or three quarters) such that the court can be satisfied that the aims of the original punishment have been met. *Compare United States v. Anderson*, 16-CR-824-1 (JMF), 2020 WL 2849483, at *2 (S.D.N.Y. June 2, 2020) (granting compassionate release motion where non-violent offender had served two-thirds of his sentence) *and Ozols*, 2020 WL 2849893, at *2 (granting release where defendant convicted of conspiracy to commit wire and bank fraud had served three-quarters of his sentence) *with United States v. Merlo*, 17-cr-0738 (LAK), 2020 WL 3001039, at *3 (S.D.N.Y. June 4, 2020) (denying motion where defendant had served only nine months of a 42-month sentence) *and United States v. Sessum*, 15 Cr. 667-6 (KPF), 2020 WL 2836781, at *5 (S.D.N.Y. June 1, 2020) (denying motion where defendant had served 14 months of a 90-month sentence).

## **CONCLUSION**

The request for appointment of counsel is DENIED. The motion for compassionate release is DENIED without prejudice to its renewal should Morel's health or conditions at FCI Danbury materially worsen. The Clerk of Court is directed to close the motion at Docket 210. The Clerk's Office is also directed to mail a copy of this Order to Morel at FCI Danbury.

Dated: New York, New York  
      June 22, 2020

SO ORDERED

_____  
PAUL A. CROTTY  
United States District Judge